# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHIE LEE PARKS JR., | 1:11-cv-00463-AWI-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| BRENDA M. CASH, | |
| Respondent. | |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

<u>RELEVANT HISTORY</u>

Following a jury trial, Petitioner was found guilty of one count of assault with intent to commit rape (Cal. Penal Code[1] § 261(a)(2)).  It was also found true that Petitioner had two prior serious felony convictions (§ 667(a)), had two prior serious or violent felony convictions within the meaning of the "Three Strikes" law (§§ 667(b)-(I), 1170.12(a)), and had a prior sex offense conviction (§ 667.6(a)).

On September 26, 2008, Petitioner was sentenced to twenty-five years to life plus an additional ten years for one count of assault with intent to commit rape (§ 261(a)(2)) with prior conviction enhancements (§§ 667(a)(1), 667.6(a).

Petitioner filed a timely notice of appeal.  On February 2, 2010, the California Court of

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

1    Appeal, Fifth Appellate District affirmed the judgment.

2         On June 17, 2010, Petitioner filed a habeas corpus petition in the California Supreme

3    Court.  The petition was denied on January 19, 2011.

4         Petitioner filed the instant federal petition for writ of habeas corpus on March 18, 2011.

5    Respondent filed an answer to the petition on May 20, 2011.  Petitioner did not file a traverse.

6                              STATEMENT OF FACTS[2]

7              On December 7, 2006, [Petitioner] and Michelle F. were patients at the
        Psychiatric Assessment Center for Treatment (PACT) unit, which was part of
8        University Medical Center.  The PACT unit provided assessment, stabilization,
        and referral services on an emergency basis to persons with mental health
9        concerns.  Admission to the unit did not necessarily mean the person admitted was
        mentally ill.  Michelle, who was 25 years old at the time of trial, is
10       developmentally delayed and emotionally disturbed, and operates socially at a 10-
        or 12-year old level.  On December 7, 2006, Michelle was sitting in the TV room
11       in the PACT unit watching TV when [Petitioner] pulled a chair next to her, sat
        down, leaned in close to her, and gave her a bracelet.  She felt uncomfortable, and
12       got up and went to the bathroom.  The bathroom did not lock; only one person
        was allowed in it at a time.  As Michelle was washing her hands, [Petitioner]
13       entered the bathroom and turned off the light; he took of his pants and touched her
        wait and breasts.  He unbuckled Michelle's pants and pulled them down a few
14       inches.  He pushed her onto the floor, then knelt with one knee on each side of her
        knees.  He put his penis near her private parts.  While he was kneeling over her,
15       he said, "I want to hurt you."  She kneed him in the stomach and ran out of the
        bathroom.  She told the people at the front desk and the security guards she had
16       been raped, because that was what [Petitioner] was trying to do.  A PACT unit
        nurse and an investigator for the district attorney's office testified Michelle told
17       them she had been raped; two security guards, a mental health clinician from the
        PACT unit, and a deputy sheriff testified Michelle reported only that [Petitioner]
18       hurt her, touched her, tried to have sex with her, or forced himself on her.

19             A nurse conducted a sexual assault forensic examination of Michelle.  She
        found a suction injury on the side of Michelle's neck.  She took a swab of it to test
20       any saliva present.  The parties stipulated that the DNA found on the swab was
        [Petitioner's].  No sperm was found in the vaginal swabs.

21
22             The court admitted the testimony of D.C., who testified that in 1991, when
        she was 15 years old, she was spending the night with [Petitioner's] sister and
        [Petitioner] or his brother provided her with alcohol.  She got drunk and passed
23       out.  She woke up later and went to the bathroom; while she was in the hallway,
        [Petitioner] pulled her into a bedroom, pushed her onto the bed, pulled down her
24       underwear, and had sexual intercourse with her against her will.  The court also
        admitted evidence that [Petitioner] had a prior conviction of sexual penetration by
25       a foreign object, specifically a finger (§ 289).

26   (Ex. A, at 2-3.)

27   ────────────────

28       [2] The following factual summary is taken from the California Court of Appeal's opinion on direct appeal.

                                          2

1

DISCUSSION

2 I.    Jurisdiction

3      Relief by way of a petition for writ of habeas corpus extends to a person in custody

4 pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

5 or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

6 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered

7 violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises

8 out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.

9 28 U.S.C. § 2254(a); 2241(d).

10      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

11 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

12 enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

13 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

14 Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

15 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

16 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant

17 petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

18 II.    Standard of Review

19      Where a petitioner files his federal habeas petition after the effective date of the Anti-

20 Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

21 the state court's adjudication of his claim:

22      (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme
23      Court of the United States; or

24      (2) resulted in a decision that was based on an unreasonable determination of the
     facts in light of the evidence presented in the State court proceeding.
25

26 28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d)

27 unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly

28 established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct.

770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and <u>Williams v. Taylor</u>, 539 U.S. 362, 412

(2000)).  Habeas relief is also available if the state court's decision "involved an unreasonable

application" of clearly established federal law, or "was based on an unreasonable determination

of the facts" in light of the record before the state court.  <u>Richter</u>, 131 S.Ct. 785 (citing 28 U.S.C.

§ 2254(d)(1), (d)(2)).  "[C]learly established ... as determined by" the Supreme Court "refers to

the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant

state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412.  Therefore, a "specific" legal rule

may not be inferred from Supreme Court precedent, merely because such rule might be logical

given that precedent.  Rather, the Supreme Court case itself must have "squarely" established that

specific legal rule.  <u>Richter</u>, 131 S.Ct. at 786; <u>Knowles v. Mirzayance</u>, __ U.S. __, 129 S.Ct.

1411, 1419 (2009).  Moreover, the Supreme Court itself must have applied the specific legal rule

to the "context" in which the Petitioner's claim falls.  <u>Premo v. Moore</u>, __ U.S. __, 131 S.Ct.

733, 737 (2011).  Under § 2254(d)(1), review is limited to the record that was before the state

court adjudicated the claim on the merits.  <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S.Ct. 1388, 1398

(2011).  "A state court's determination that a claim lacks merits precludes federal habeas relief

so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

<u>Richter</u>, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing

evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

and based on a factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254

apply to findings of historical or pure fact, not mixed questions of fact and law.  <u>See</u> <u>Lambert v.</u>

<u>Blodgett</u>, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501

U.S. 979, 803 (1991).  However, "[w]here a state court's decision is unaccompanied by an

explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

basis for the state court to deny relief."  <u>Richter</u>, 131 S.Ct. at 784.

III.   Ineffective Assistance of Counsel Claims

Petitioner claims his trial counsel rendered ineffective assistance by (1) failing to introduce "clear evidence" of Petitioner's mental disorder; (2) failing to obtain competent assistance of a psychiatric expert to assist in Petitioner's defense; (3) failing to seek the assistance of a mental health expert and thereby adduce evidence of Petitioner's condition and its implication to substantiate his defense; (4) failing to pursue or investigate a mental defect defense; (5) failing to request jury instructions concerning the effect of such a disorder on the specific intent element of the offense; and (6) failing to move to admit statements made by the victim and to exclude statements made by Petitioner.

The California Court of Appeal denied Claims One through Five on the merits.  Claim Six was denied by the California Court of Appeal for lack of foundation and not supported by either argument or citation to authority.  (Ex. A, to Answer.)  Petitioner presented these claims to the California Court of Appeal and California Supreme Court.  Because the California Supreme Court issued a summary denial, the Court looks through that decision and presumes the Court adopted the reasoning of the Court of Appeal's reasoned decision.

The California Court of Appeal found Petitioner failed to meet his burden under Strickland stating:

> Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has a right to the [effective] assistance of counsel"; that is, he has a right "' the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' [Citations.]" (*People v. Ledesma* (1987) 43 Ca.3d 171, 215 (*Ledesma*).)  "The ultimate purpose of this right is to protect the defendant's fundamental right to a trial that is both fair in its conduct and reliable in its result." (*Ibid*.)  "Under this right, the defendant can reasonably expect that in the course of representation his counsel will undertake only those actions that a reasonably competent attorney would undertake" and "before counsel undertakes to act at all he will make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation." (*Ibid*.)
>
> A claim of ineffective assistance has two components: (1) the defendant must show counsel's performance was deficient, i.e., that if fell below an objective standard of reasonableness under prevailing professional norms; and (2) the defendant must establish prejudice as a result. (*Ledesma*, *supra*, 43 Cal.3d at pp.216-217.)  To show prejudice, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Id*.

at pp.217-218.)

A. *Evidence of defendant's mental disorder*

Defendant contends his trial counsel, John Missirlian, provided ineffective assistance because he failed to present any evidence of defendant's mental disease or disorder and failed to request jury instructions regarding the affect of mental disorder on the element of specific intent.

Evidence of a defendant's mental disease, defect, or disorder is not admissible to show the defendant lacked the capacity to form the mental state required for the offense with which he or she is charged. (§§ 25, subd. (a), 28, subd. (a).) Such evidence is admissible, however, to show whether the defendant actually formed the required intent or other mental state, when a specific intent crime is charged. (§ 28, subd. (a).) At the guilt phase of the trial, an expert may testify concerning the defendant's mental condition, but may not testify regarding the ultimate issue whether the defendant had actually formed the required intent at the time he acted. (§ 29; *People v. Nunn* (1996) 50 Cal.App.4th 1357, 1364.)

At trial, Missirlian offered no evidence of defendant's mental condition at the time the offense was committed. Defendant contends such evidence should have been submitted as evidence negating the element of specific intent to commit rape. According to the probation report, the original criminal proceedings against defendant were suspended pursuant to section 1368, and three doctors evaluated his competency. In December, 2006, two of them found him not competent to stand trial; the third believed he was competent. Defendant was committed to Patton State Hospital on May 8, 2007. His competency was found to be restored on June 27, 2007. The original case was dismissed; the complaint in this proceeding was refiled on October 29, 2007. The probation report also indicates defendant told the probation officer he hears voices and sees things, and he has had mental health problems all his life.

On the first day of trial, June 23, 2008, the court conducted a *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118), after defendant requested new counsel be appointed for him. Defendant complained his attorney had not spent adequate time discussing his case with him; he also mentioned that Missirlian was supposed to have a doctor, a specialist, see him, but the doctor did not come and Missirlian did not communicate with defendant about it. The court questioned Missirlian about his work on the case; in response to a query about obtaining a specialist, Missirlian stated they had discussed "dealing with diminished capacity as it now stands, but in this case, because it's a general-intent crime, it would not be of any help to us in that respect."

Defendant asserts Missirlian had sufficient information concerning defendant's mental condition that he should have conducted a thorough investigation of the relevant facts and law, consulted a mental health expert, and presented evidence raising the issue in his defense. The record does not indicate whether, or to what extent, Missirlian investigated the facts or law relevant to the issue of defendant's mental state at the time of the offense. It is not clear whether he consulted any mental health experts to determine whether defendant suffered from any mental impairment or disorder, or whether any such impairment may have affected him at the time of the offense.

Missirlian's explanation that he did not have a specialist examine defendant because the charged crime was a general intent crime suggests he did

6

not make a rational and informed tactical decision based on adequate investigation of the applicable law, since assault with intent to commit rape is a specific intent crime. (*People v. Dillon* (2009) 174 Cal.App.4th 1367, 1383.)  Regarding defense counsel's explanation for acts or omissions asserted to demonstrate ineffective assistance, the court in *People v. Pope* (1979) 23 Cal.3d 412, stated:

"Where the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus.  In habeas corpus proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of. [Citations.] For example, counsel may explain why certain defenses were or were not presented.  Having afforded the trial attorney an opportunity to explain, courts are in a position to intelligently evaluate whether counsel's acts or omissions were within the range of reasonable competence." (*Pope*, *supra*, 23 Cal.3d at p. 426.)

Here, Missirlian's explanation was not a full description of the reasons for his actions given in response to a petition for habeas corpus.  Rather, it was a brief response to the court's question raised during the hearing of an oral Marsden motion.  The court did not fully explore the extent of counsel's investigation of the facts and law relating to defendant's asserted mental disorder.  We hesitate to find defendant has met his "heavy burden." (*Pope*, *supra*, 23 Cal.3d at p.426, fn. 16) of demonstrating the deficient performance necessary for a claim of ineffective assistance of counsel based on such a cursory explanation.

Even if we were to find that defendant has shown deficient performance on the part of his trial attorney, however, defendant must also establish prejudice resulting from that deficient performance.  This he has not done.  Defendant has not identified anything in the record that explains the nature or extent of any mental disease, defect, or disorder from which defendant suffered at the time of his offense.  He has not shown that any mental disorder may have affected him at the time of the offense in such a way that he did not form the specific intent to commit rape.  He has not demonstrated through the record that, had Missirlian investigated defendant's mental condition, he would have obtained evidence tending to show defendant was not afflicted by a mental disorder that affected him at the time of the offense in such a way that he did not form the specific intent to commit rape.  Consequently, he has not shown there was a reasonable probability that, but for Missirlian's deficient performance, the result of the trial would have been different.  Defendant has not established that he was denied the effective assistance of counsel.

B. *Admission of statements of defendant and the victim*

Defendant complains that Missirlian did not move to admit "statements the victim made about following a man in Costco" and did not seek exclusion of statements made by defendant.

On appeal, contentions supported neither by argument nor by citation to authority are deemed to be without foundation and to have been abandoned.  This court is not required to consider alleged error where the appellant merely complains of it without pertinent argument. (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 710.)  Michelle testified to an incident in which she followed a man to his car at Costco.  Defendant has not identified any statements about that incident he contends were not admitted but should have been.  He has provided no argument in support of his contention that any such statements should have been

1  admitted, or that counsel's performance was deficient because of a failure to
2  introduce such statements at trial.  The issue is deemed abandoned.

3          Regarding the exclusion of statements of defendant, defendant cites
   numerous authorities concerning involuntary confessions.  No confession of
4  defendant was admitted at trial.  Defendant has not identified any statements by
   him that were admitted at trial and that he contends his attorney should have
5  sought to exclude.  He presents no argument that any such statements were
   involuntarily made or inadmissible, or that Missirlian's performance as his
6  attorney was deficient because he failed to seek exclusion of any such statements.
   The issue is deemed abandoned.

7  (Ex. A, at 7-14.)

8          The law governing ineffective assistance of counsel claims is clearly established for the

9  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

10 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

11 assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

12 668, 687, 104 S.Ct. 2052, 2064 (1984).  First, the petitioner must show that counsel's

13 performance was deficient, requiring a showing that counsel made errors so serious that he or she

14 was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S.

15 at 687.  The petitioner must show that counsel's representation fell below an objective standard of

16 reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

17 reasonable professional judgment considering the circumstances. Id. at 688; Harrington v.

18 Richter, 131 S.Ct. at 788 (The question is whether an attorney's representation amounted to

19 incompetence under "prevailing professional norms," not whether it deviated from best practices

20 or most common custom.).  Judicial scrutiny of counsel's performance is highly deferential.  A

21 court indulges a strong presumption that counsel's conduct falls within the wide range of

22 reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984);

23 Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

24         Second, the petitioner must show that counsel's errors were so egregious as to deprive

25 defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must

26 also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

27 ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

28 1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance

1   was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that

2   (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would

3   have been different.  It is not enough "'to show that the errors had some conceivable effect on the

4   outcome of the proceeding.'"  Richter, 131 S.Ct. at 787 (internal citation omitted).

5        A court need not determine whether counsel's performance was deficient before

6   examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

7   Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove

8   prejudice, any deficiency that does not result in prejudice must necessarily fail.  Ineffective

9   assistance of counsel claims are analyzed under the "unreasonable application" prong of

10  Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

11       Here, the California Court of Appeal's decision denying Claims One through Five is not

12  an unreasonable determination of the Supreme Court's Strickland decision, nor is it an

13  unreasonable determination of the facts in light of the decision.  28 U.S.C. § 2254.  Claims One

14  through Five all relate to Petitioner's argument that trial counsel was ineffective for failing to

15  present his mental condition as a defense at trial.  The Court of Appeal reasonably determined

16  that Petitioner has failed to present or point to any evidence which supports his claim that his

17  mental condition would have been a viable defense at trial.  See e.g. James v. Borg, 24 F.3d 20,

18  26 (9th Cir. 1994) (rejecting ineffective assistance of counsel claim stating, "conclusory

19  allegations which are not supported by a statement of specific facts do not warrant habeas

20  relief"); United States v. Smith, 924 F.2d 889, 896 (9th Cir. 1991) ("[U]nsupported and

21  conclusory claims are not sufficient to show error.").  Moreover, there was ample evidence of

22  Petitioner's specific intent.  Petitioner watched the victim enter the restroom and when she was

23  inside the restroom alone, he entered the room and turned off the light.  (RT 841-867.)  Petitioner

24  took off his clothing and proceeded to kiss the victim.  (RT 841-842.)  Petitioner touched the

25  victim on her hips making her scared.  (RT 844-845.)  Petitioner continued to touch her private

26  parts, including her chest, and gave her a hickey on her neck.  (RT 872-873, 882, 910, 1102,

27  1107-1109, 1114, 1124-1125, 1127.)  She tried to push Petitioner away but he pushed her to the

28  ground, put his penis close to her private area and tried to put it inside her.  Petitioner also told

9

1 the victim that he wanted to hurt her.  (RT 867, 887-880, 900, 909-910.)

2      Evidence was admitted that Petitioner had previously committed two prior sexual

3 offenses.  (RT 1132, 1152-1154, 1158.)  Based on the strong evidence to support Petitioner's

4 conviction, the Court of Appeal's conclusion that Petitioner had not established prejudice was

5 not unreasonable.  Thus, there is no possibility that "fairminded jurists could disagree" on the

6 correctness of the state court decision.  Richter, 131 S.Ct. at 786.

7      The California Supreme Court's denial of Claim Six is also not objectively unreasonable.

8 Petitioner fails to identify any statement he contends should have been admitted to impeach the

9 victim.  In fact, on cross-examination, defense counsel elicited from the victim that when she was

10 at Costco when she was younger, a boy took her to his car and starting touching her.  (RT 894-

11 895, 902.)  Petitioner's claim that counsel further failed to exclude certain unidentified

12 statements he allegedly made is not supported by the record.  The record demonstrates that

13 defense counsel did object to statements by Petitioner being admitted at trial and the court

14 reserved ruling on the issue until further proceedings.  (RT 748-759.)  No such statements were

15 ever admitted at trial, and Petitioner's claim to the contrary is without merit.  Therefore,

16 Petitioner has failed to demonstrate that his counsel's performance was deficient and there is no

17 reasonable probability that, but for counsel's unprofessional errors, the result would have been

18 more favorable.  Accordingly, the state court's decision denying the claim was not objectively

19 unreasonable.  28 U.S.C. § 2254.

20                          RECOMMENDATION

21      Based on the foregoing, it is HEREBY RECOMMENDED that:

22      1.      The instant petition for writ of habeas corpus be DENIED; and

23      2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

24      This Findings and Recommendation is submitted to the assigned United States District

25 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

26 Local Rules of Practice for the United States District Court, Eastern District of California.

27 Within thirty (30) days after being served with a copy, any party may file written objections with

28 the court and serve a copy on all parties.  Such a document should be captioned "Objections to

1    Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

2    and filed within fourteen (14) days after service of the objections.  The Court will then review the

3    Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

4    failure to file objections within the specified time may waive the right to appeal the District

5    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6         IT IS SO ORDERED.

7    **Dated:    July 5, 2011**          _____/s/ **Dennis L. Beck**_____
                                          UNITED STATES MAGISTRATE JUDGE